UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ALBERTO R.C., <br><br> Petitioner, <br><br> v. <br><br> RON MURRAY, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01618-KES-SKO (HC) <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS <br><br> Doc. 1 |

This habeas action concerns the re-detention of petitioner Luis Alberto R.C., a noncitizen who was detained and released in 2022 then recently re-detained.[1]  For the reasons explained below, the petition for writ of habeas corpus is granted.

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I. Background

Petitioner is a 49-year-old asylum-seeker from Colombia who entered the United States without inspection on June 7, 2022. Doc. 1 at ¶¶ 1–2, 55; Doc. 11, Jerome Decl. at ¶ 5. Petitioner was detained by immigration authorities shortly after entry. *See* Doc. 15, Ex. 3. On June 9, 2022, immigration officials provided petitioner with a notice to appear for removal proceedings. *See* Doc. 11, Ex. 1. In the notice to appear, immigration officials designated him as "an alien present in the United States who has not been admitted or paroled"; they did not designate him as an "arriving alien." *Id.* Immigration officials then decided that petitioner would be released on his own recognizance pending those removal proceedings, provided that he comply with certain conditions. Doc. 15, Ex. 3. Immigration officials provided petitioner with a notice of custody determination which stated that he was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226, "pending a final administrative determination in [his] case." *Id.*

The regulations that authorize immigration authorities to release a noncitizen pursuant to § 1226 require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following his release, petitioner lived in San Jose, California with his wife and eight-year-old son and attended his local church. *See* Doc. 1 at ¶ 59. Petitioner sought relief in his removal proceedings by filing an application for asylum. *See* Doc. 11, Jerome Decl. at ¶ 7. Respondents do not allege that petitioner violated any condition of his release. *See* Doc. 11.

On September 30, 2025, agents arrested petitioner when he reported for a routine check-in with Immigration and Customs Enforcement ("ICE"). Doc. 1 at ¶ 58; Doc. 11, Jerome Decl. at ¶ 8. Petitioner is now detained at Mesa Verde ICE Processing Center, a detention center in Bakersfield, California. Doc. 1 at ¶ 16; Doc. 11, Jerome Decl. at ¶ 9.

Several months before he was re-detained, the Department of Homeland Security ("DHS") issued a policy which provides that noncitizens who entered the United States without admission or parole are "applicants for admission" and are subject to 8 U.S.C. § 1225(b), a statutory provision which mandates detention. Doc. 1 at ¶¶ 44–46. In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals agreed with DHS's new reading of the statute. *Id.* ¶ 47. Under DHS's new policy, petitioner has no opportunity for release on bond.

## II.   Procedural History

On November 21, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that his re-detention without a bond hearing violates the Due Process Clause and that 8 U.S.C. § 1226(a) applies to him, rather than 8 U.S.C. § 1225(b). The Court issued a briefing schedule and informed the parties that it intended to rule directly on the petition. Doc. 7. Respondents filed an opposition on December 2, 2025, arguing that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Doc. 11. Petitioner filed a reply on December 4, 2025. Doc. 12. The Court ordered respondents to file documentation concerning petitioner's initial period of detention and release; respondents filed that documentation on December 10, 2025. Docs. 14, 15.

## III.   Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*

*Davis*, 533 U.S. 678, 687 (2001).

## IV. Discussion

Petitioner argues that DHS's new policy and the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), are based on an erroneous interpretation of the statute, and that because he has no opportunity for a bond hearing under those authorities, his due process rights have been violated. *See* Doc. 1 at ¶¶ 62–68; Doc. 2-1 at 10–24. Respondents contend that petitioner has no procedural due process rights because he is subject to the "entry fiction" doctrine. Doc. 11 at 3.

The "entry fiction" doctrine arises from the distinction made by our immigration laws "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the [Supreme] Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). For those on the threshold, they have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). But "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

In some instances, however, one may be physically present in the United States but still treated as if stopped at the border. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). That is because the distinction between those outside and inside the country "would be meaningless if it became inoperative as soon as an arriving alien set foot on U. S. soil. When an alien arrives at a port of entry—for example, an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Id.* In *Thuraissigiam*, the Court held that this doctrine applies when a noncitizen manages to run 25

4

yards past the border before being apprehended by immigration officials; the noncitizen there could not be considered to have "effected an entry." *See id.* at 114, 140.

The cases cited by respondents hold that the entry fiction doctrine addresses due process rights regarding *admission* into the country—not detention. *Id.* at 140 ("[A]n alien in respondent's position has only those rights *regarding admission* that Congress has provided by statute."); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . ."); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention and holding that *Thuraissigiam* does not foreclose a challenge to detention).

Noncitizens outside the country, as well as noncitizens subject to the entry fiction doctrine, do not have due process rights to challenge their denial of admission into the country. As the Supreme Court explained in *Thuraissigiam*, "[t]he power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* (internal citations and quotation marks omitted).

Respondents ask the Court to apply the "entry fiction" doctrine to petitioner, but the important distinction between this case and those cited above is that, here, the government did not treat petitioner as if he had been stopped at the border when it detained and released him after his entry. "The responsibilities of officials with respect to noncitizens at the border" and other ports of entry "are set out in 8 U.S.C. § 1225." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1118 (9th Cir. 2025). When immigration authorities detained petitioner, they did not treat him as subject to 8 U.S.C. § 1225. Instead, they provided him with a notice of custody determination which stated that he was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226. Doc. 15, Ex. 3.

1    Section 1226(a) is the discretionary detention authority for "aliens already present in the
2    United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *see Cardenas v. Alomar*, No.
3    25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (noting the "scores of
4    decisions" that have reached this conclusion). It is significant that immigration officials invoked
5    this statute when detaining and releasing petitioner because, under 8 U.S.C. § 1226(a), petitioner
6    has the right to a bond hearing before an immigration judge, *see* 8 C.F.R. § 1236.1(d)(1), and he
7    must be released on bond if he can "establish to the satisfaction of the Immigration Judge . . . that
8    [] he does not present a danger to persons or property, is not a threat to the national security, and
9    does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017)
10   (quoting *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).[2]

11   Here, the government itself treated petitioner as a person who had entered and was already
12   present in the country when they detained and released him. This fact undermines respondents'
13   attempt to apply the entry fiction doctrine. The government's actions in releasing petitioner
14   subject to § 1226(a) are inconsistent with their claim that petitioner is subject to the entry fiction
15   doctrine. While "the line between when a person is 'seeking admission' as opposed to being
16   'already in the country' is not necessarily obvious" in all cases, *see Miguel v. Noem*, No. 25 C
17   11137, 2025 WL 2976480, at *5 (N.D. Ill. Oct. 21, 2025), here immigration officials implicitly
18   determined that petitioner was "already present in the country" when they released him pursuant
19   to 8 U.S.C. § 1226(a). Respondents' new argument that the entry fiction doctrine applies is
20   contradicted by the government's prior conduct.

21   As a person inside the United States, petitioner has due process rights. *Zadvydas*, 533
22   U.S. at 693. The Court therefore turns to analyze petitioner's due process claim "in two steps: the
23   first asks whether there exists a protected liberty interest under the Due Process Clause, and the
24   second examines the procedures necessary to ensure any deprivation of that protected liberty
25   interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025

---

[2] In contrast, those subject to 8 U.S.C. § 1225(b)(2) have no statutory right to a bond hearing. *See Jennings*, 583 U.S. 281, 283 (noting that the parole provision is a limited "exception [which] implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

6

WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.  Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar.  Among other things, it allowed him to live with his family in San Jose for over three years while seeking relief in his removal proceedings.

Respondents argue that the government's prior conditional release of petitioner pursuant

to 8 U.S.C. § 1226(a) should not prevent them from re-evaluating that decision and subjecting petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Doc. 11 at 2. The argument that § 1225(b)(2) applies to someone in petitioner's circumstances is incorrect for the reasons set forth in *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at *4–8 (E.D. Cal. Nov. 12, 2025). Moreover, even if respondents were correct that section 1225(b)(2)(A) could apply to petitioner, the government previously represented to petitioner in the notice of custody determination that he was being released "[p]ursuant to the authority contained in section 236" of the INA, which is codified at 8 U.S.C. § 1226, "pending a final administrative determination in [his] case." Doc.15, Ex. 3. Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether he is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a reasonable expectation that he would be entitled to retain his liberty during his removal proceedings so long as he was not a flight risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As another court recognized in this context, once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Even if section 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to him that his release was pursuant to section 1226, combined with the three years he spent at liberty while relying on that representation.

The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is

8

due before the government may terminate his liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over three years in reliance on the government's previous representations that he was being released pursuant to § 1226(a) pending his removal proceedings. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner was determined not to be a danger or flight risk when immigration authorities released him in 2022, and respondents do not allege that petitioner is a danger or a flight risk now. *See* Doc. 11. They also do not allege that he violated any condition of his release. *See id.* Given these circumstances, the risk of erroneous deprivation is significant.

Third, although the government has a strong interest in enforcing the immigration laws,

the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that he is a flight risk or danger to the community by clear and convincing evidence. That hearing should have occurred before petitioner was re-detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)). Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-*deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9.

### V.    Conclusion and Order

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a

flight risk or danger to the community such that his physical custody is legally justified.

The Clerk of Court is directed to close this case and enter judgment for petitioner.

IT IS SO ORDERED.

Dated:   December 16, 2025

UNITED STATES DISTRICT JUDGE

11